IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CITIBANK TEXAS, N.A., | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil No. 3:06-CV-0395-H |
| | * |
| PROGRESSIVE CASUALTY INSURANCE COMPANY, | * |
| | * |
| | * |
| Defendant. | * |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment, and supporting brief and appendix, filed April 28, 2006; Plaintiff's Cross-Motion for Partial Summary Judgment, and supporting brief and appendix, filed May 18, 2008; Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, filed May 18, 2006; Defendant's Consolidated Reply Brief in Support of its Motion for Summary Judgment and in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment, filed June 7, 2006; Defendant's Supplemental Appendix, filed June 7, 2006; and Citibank Texas, N.A.'s Reply Brief in Support of its Cross-Motion for Partial Summary Judgment, filed June 22, 2006.

For the reasons that follow, Plaintiff's motion for partial summary judgment is granted on its claim against Defendant for breach of contract. Defendant's motion for summary judgment is granted on all other issues. Final judgment will be entered by separate order.

## I. Procedural Background

This diversity case was brought by Plaintiff Citibank Texas, N.A. ["Citibank"] to enforce a Financial Institution Bond ["Bond"] issued to Citibank by Defendant Progressive Casualty Insurance Company ["Progressive"]. Citibank claims that the Bond covers the loss Citibank incurred in an underlying state court litigation; and that Progressive refused coverage wrongfully and in bad faith.

On March 2, 2006, Citibank filed its complaint against Progressive in this Court for breach of contract; breach of the duty of good faith and fair dealing, in violation of the common law and of the Texas Insurance Code; reimbursement of costs incurred in underlying litigation; and an award of attorney's fees incurred here in the Bond's enforcement. In answer, Progressive maintains that the Bond by its terms precludes coverage of Citibank's losses and cost; and that in any event, denial of coverage was not made in bad faith. Both parties have moved for summary judgment.

## II. Summary Judgment Standard

The Federal Rules of Civil Procedure provide that summary judgment shall be granted if the evidence establishes no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994). Under proper circumstances, awarding summary judgment is favored in the federal courts: "Summary judgment reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1197 (5th Cir. 1986) (footnote omitted).

A summary judgement movant must inform the court of its basis for the motion and identify the material specified in Rule 56(c) that it believes demonstrates the absence of a genuine issue of

2

material fact. *Celotex Corp v. Catrett*, 477 U.S. 317, 322-23 (1986); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). If the movant fails to meet its initial burden, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (en banc).

If the movant carries its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Celotex*, 477 U.S. at 324. A party opposing summary judgment must go beyond the pleadings and "set forth specific facts" revealing a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Ruiz*, 12 F.3d at 513. A party opposing summary judgment may not rest on mere conclusory allegations or denials in the pleadings. Fed. R. Civ. P. 56(e); *see also Hightower v. Texas Hosp. Ass'n.*, 65 F.3d 443, 447 (5th Cir. 1995). A party must establish more than "some metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S. at 586. Significant probative evidence must be adduced from which a jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 249.

In determining whether a genuine issue exists for trial, the Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the nonmovant. *Eastman Kodak v. Image Technical Servs., Inc.*, 504 U.S. 451, 456-58 (1992); *Gremillion v. Gulf Coast Catering Co.*, 904 F.2d 290, 292 (5th Cir. 1990); s*ee also Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 956 (5th Cir. 1993). If the record, taken as a whole, cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue remains for trial. *Matsushita*, 475 U.S. at 587; *see Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

With these summary judgement standards in mind, the Court turns to an analysis of the motions in this case.

### III. Analysis

A.     Breach of Contract

Both Citibank and Progressive move for summary judgment on Citibank's cause of action for breach of contract. Under Texas law, which both parties acknowledge to be applicable here, the elements of the claim are (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003). The parties agree that the Financial Institution Bond issued by Progressive to Citibank is a valid insurance contract, governed by contract principles.[1]  *See FDIC v. Firemen's Ins. Co.*, 109 F.3d 1084, 1087 (5th Cir. 1997); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Only the third factor, breach, is at issue. The sole inquiry is whether the Bond insures Citibank for the loss it sustained in a state-court conversion suit.

All of the relevant facts are undisputed. Between February and September of 2002, Citibank allowed sixteen checks totaling $1,170,000 payable to its customer GoldenLife/Richardson, L.P. ["GoldenLife"][2] and endorsed by Todd P. Lindley, the president of GoldenLife's corporate general partner, to be deposited not into the GoldenLife account, but into another Citibank account held by

---

[1] The Bond is a Financial Institution Bond, Standard Form No. 24, Revised to January 1986, Bond No. 10031014-00, with limits of liability of $7,000,000, a deductible of $150,000, and an effective date range of October 1, 2002, through April 1, 2005.

[2] GoldenLife is listed as payee under several "a/k/a" forms of its name, including "GoldenLife/Preston Hollow, L.L.P." and "Veranda-Richardson."

4

Lindley in the name of his sole proprietorship, Lindley Properties. Once the checks were deposited into the Lindley Properties account, Lindley proceeded to use those funds in a manner allegedly inconsistent with GoldenLife's intent.[3] As president of GoldenLife's corporate general partner, Lindley's name appeared on the signature card for the GoldenLife account. However, although Lindley's endorsement of the GoldenLife checks assumes a variety of forms, none of his endorsements bear GoldenLife's account number. Instead, fifteen of the endorsements bear the account number for the Lindley Properties account, #0325635325. Nine of the endorsements make no reference to GoldenLife in any form. One check, from D. Stansbury, dated July 31, 2002, and payable to GoldenLife/Richardson I, L.P., in the amount of $50,000, is properly endorsed by Lindley in his GoldenLife capacity, but contains no account number at all ["Stansbury Check"].

After Lindley's alleged misuse of the funds was discovered, GoldenLife accused Citibank of conversion for mis-depositing the checks to Lindley's account. On February 14, 2005, GoldenLife filed a suit for damages against Citibank in the 116th Judicial District Court of Dallas County. *See GoldenLife/Richardson, L.P. v. Citibank Texas, N.A. f/k/a First American Bank SSB*, No. 05-01495 ["GoldenLife Lawsuit"]. Agreeing with GoldenLife that the endorsements were unauthorized, and the deposits thus improper, the state court entered summary judgment in GoldenLife's favor against Citibank on the issue of liability; and it set a trial date to determine the damage amount. GoldenLife and Citibank then reached pre-trial settlement in the amount of $845,000 ["GoldenLife Settlement"]. Dismissal was entered on February 28, 2006.

The parties agree that Progressive had the right to defend or otherwise to participate in the GoldenLife Lawsuit and its settlement discussions. Progressive had actual notice of the suit, of

---

[3] The claims between Lindley and GoldenLife are not before the Court.

5

GoldenLife's claims, and of the settlement discussions; and Progressive chose not to participate in the GoldenLife Lawsuit in any way. In correspondence between Citibank and Progressive during pendency of the case, Progressive took the consistent position that the Bond did not and would not cover any sum for which Citibank might ultimately be held liable. Citibank notified Progressive of the finality of the state-court action by letter of March 2, 2006, the same day it filed suit in this Court to enforce the Bond.

In applying these undisputed facts to determine whether the Bond covers the GoldenLife Settlement, the Court interprets the Bond as a matter of law as it would any insurance policy. *See FDIC v. Firemen's Ins. Co.*, 109 F.3d at 1087; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). A court's primary concern when construing an insurance contract is to give effect to the intentions of the parties as expressed by the policy language. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex . 1983). The terms used in the policy are given their plain, ordinary meaning unless the policy itself shows that the parties intended the terms to have a different, technical meaning. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). The insurance contract is considered as a whole, with each part to be given effect. *Balandran v. Safeco Ins. Co.*, 972 S.W.2d 738, 741 (Tex. 1998). When the insurance contract defines a term used in the policy, the policy's definition controls the analysis. *Trinity Univ. Ins. Co. v. Cowan*, 945, S.W.2d 819, 823 (Tex. 1997).

In this case, Citibank argues that the Bond covers the GoldenLife Settlement as a matter of law. Progressive argues three primary grounds for its position to the contrary: (1) that Lindley's endorsement does not meet the definition of "unauthorized endorsement" as required by Coverage D; (2) that even if so, Citibank's loss was not the required "direct result" of the endorsement; and

6

(3) that Bond Exclusion (h) precludes coverage because the loss was caused by a Citibank employee. In response, Citibank maintains *inter alia* that the crucial issue of Citibank's liability for Lindley's "unauthorized endorsements" was decided at the state-court level and thus is not subject to collateral attack here.  Each of the colorable issues raised by the parties is resolved below.

    1.    Unauthorized Endorsement

Under Insuring Agreement D of the Bond, titled "Forgery or Alteration," as amended by the Unauthorized Signatures Rider, Citibank is indemnified for "[a]ccepting, paying or cashing any Negotiable Instruments . . . that bear *unauthorized signatures or endorsements*." Def. App. Vol. I, Exh. 3, at 41 (emphasis added).  In the GoldenLife Lawsuit, the state court held as follows:

> The Court finds that [Citibank] accepted and paid checks that bear *unauthorized endorsements*. The Court finds that [Citibank] is not a holder in due course of the sixteen checks . . . because it took the checks with notice of [Lindley's] breach of fiduciary duty under § 3.307 of the Texas Business & Commerce Code. [GoldenLife] is therefore entitled to partial summary judgment as to liability alone . . . .

Def. App. Vol. II, Exh. 9, at 1063 (emphasis added).

Thus, the state court held Citibank liable for accepting deposits with "unauthorized endorsements," an event expressly covered by the Bond. *See* Def. App. Vol. I, Exh. 3, at 41.  The Bond gave Progressive the right to defend the GoldenLife Lawsuit, of which it had actual notice and declined to participate. *See id*. at 27 ("The Underwriter, at its sole option, may elect to conduct the defense of such legal proceeding, in whole or in part.").  Under Texas law, Progressive is therefore liable to Citibank for the settlement amount. *See Minter v. Great Am. Ins. Co. of New York*, 423 F.3d 460, 473 (5th Cir. 2005) ("[B]ecause [the insurer] had constructive notice of the underlying action against [the insured], as well as the right to defend, it is precluded from collaterally attacking

7

the state court judgment."). At a minimum, Progressive is estopped from challenging the determination that the endorsements were "unauthorized." *See Columbia Mut. Ins. Co. v. Fiesta Mart, Inc.*, 987 F.2d 1124, 1127 (5th Cir. 1993) (setting out the requirements for collateral estoppel).

Progressive challenges that result on two grounds. First, it claims that the Bond language somehow exempts the Court from honoring the state court's decision. The Bond provides as follows:

> [I]f the Underwriter elects not to defend any causes of action, neither a judgment against the Insured, nor a settlement of any legal proceeding by the Insured, shall determine the existence, extent or amount of coverage under this Bond for loss sustained by the Insured . . ..

Def. App. Vol. I., Exh. 3, at 28.

The Court interprets this language to restate the general and obvious rule that once liability of an insured is established, the act for which the insured is held liable must still be a covered event for the policy to apply. *See, e.g., Enserch Corp. v. Shand Morahan & Co., Inc.*, 952 F.2d 1485, 1493 (5th Cir. 1992). Because depositing checks with unauthorized endorsements is a covered event under the Bond, that language has no relevance here. Progressive's interpretation would allow an insurer the opportunity to relitigate its insured's liability on the merits by the mere expedient of refusing to participate in the underlying lawsuit. Such a result is inconsistent both with justice and with principles of judicial economy.

Second and more persuasively, Progressive argues that the definition of "unauthorized endorsement" applied by the state court differs from the definition in the Bond. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d at 823 ("[W]hen terms are defined in an insurance policy,

8

those definitions control."). The Bond terms were not before the state court in the GoldenLife Lawsuit. Instead, the state court applied the Uniform Commercial Code ["UCC"].

Under the UCC, an unauthorized endorsement is defined as "a signature made without actual, implied, or apparent authority." TEX. BUS. & COMM. CODE § 1.201(41). In the Bond, in contrast, an "unauthorized signature or endorsement" means "a signature or endorsement not reflected on the appropriate signature card or named in the Insured's records for the account or accounts in question." Def. App. Vol. I, Exh. 3, at 41. Although the language is very different, the substantive meaning under the facts presented here is the same. After reviewing the state court summary judgment record, which the parties agree is now before this Court in its entirety, the Court finds only one evidentiary basis on which the state court could possibly have based its decision. That basis is the Citibank account records for GoldenLife and Lindley. Accordingly, the state court's holding reflects nothing more and nothing less than the Bond's definition.

When the state-court agreed judgment was entered, partial summary judgment became final and entitled to preclusive effect. *See South Tex. Wildhorse Desert Invs., Inc. v. Texas Commerce Bank - Rio Grande Valley, N.A.*, 314 B.R. 107, 117-18 (S.D. Tex. 2004); *Muniz v. State Farm Lloyds*, 974 S.W.2d 229, 232 (Tex. App.--San Antonio 1998, no writ). Progressive is therefore estopped from collateral attack here.

Even if Progressive's argument against collateral estoppel is sustained, however, the result is the same. Applying the undisputed facts to the Bond's terms, the Court holds independently of the state court decision that Citibank's settlement of the GoldenLife Lawsuit is a covered loss under Insuring Agreement D of the Bond.

Insuring Agreement D provides coverage up to $7 million for "[l]oss resulting directly from [f]orgery or alteration of, on or in any Negotiable Instrument." Def. App. Vol. I, Exh. 3, at 24. Under the Unauthorized Signature Rider, Insuring Agreement D is amended as follows: "Accepting, paying or cashing any Negotiable Instruments or Withdrawal Orders that bear unauthorized signatures or endorsements shall be deemed to be a Forgery under this Insuring Agreement." *Id*. at 41. Because Lindley was a signatory on the GoldenLife account, Progressive argues that his signature on the GoldenLife deposits was authorized. Forgery, however, is not limited under the Bond to unauthorized signatures. The disjunctive "or" covers unauthorized endorsements as well. *See id*.

On the sixteen checks at issue, the endorsement language ranges from "Todd Lindley 0325635325" to "For deposit only 0325635325" to "GoldenLife Richardson, L.P., Pilatus Company, Inc. G.P., Todd Lindley, Pres. 0325635325," and various permutations of the above. The key element on fifteen of the sixteen endorsements is the destination account number, 0325635325. That account does not belong to GoldenLife, but to Lindley Properties. Fifteen checks payable to GoldenLife were thus endorsed with the personal account number of Todd Lindley. Under any definition, those endorsements were unauthorized.

Setting aside the Stansbury Check, which alone does not bear Lindley's account number, Citibank's potential liability to GoldenLife for the fifteen remaining mis-deposited checks is $1,120,000. That amount, for purposes of Bond coverage, is reduced to Citibank's actual loss. Subject to the Bond's deductible, if applicable, Progressive is therefore liable to Citibank in the amount of $845,000.

    2.       Exclusion for Loss Caused by Employee

Progressive argues next that even if the endorsements were unauthorized, Citibank's loss is not covered by virtue of a policy exclusion, Bond Exclusion 2(h). Under Texas law, the insurer bears the burden of establishing that one of the policy's exclusions constitutes a defense. *See Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001). Once the insurer demonstrates that an exclusion arguably applies, the burden shifts back to the insured to show that the claim does not fall within the exclusion. *Guaranty Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998).

In this case, Exclusion 2(h) of the Bond provides: "This bond does not cover . . . loss caused by an Employee . . .." Progressive takes the position that because Citibank's tellers violated the bank's policy requiring deposited checks to bear authorized endorsements, and thus allowed Lindley to act as he did, the tellers "caused" Citibank's loss. That position is untenable.

In all cases, a corporation such as Citibank can act only through its human officers and employees. In all cases involving a deposit with an unauthorized endorsement, the deposit would necessarily pass through an employee's hands. No evidence here raises the slightest inference of employee collusion or of intentional disregard of bank policy. *Cf. Empire Bank v. Fidelity & Dep. Co. of Md.*, 27 F.3d 333, 335 (8th Cir. 1994) (excluding coverage under Exclusion 2(h) where a bank officer instructed employees to accept an unauthorized endorsement in intentional violation of "prescribed procedures and reasonable commercial banking practices" to accommodate his customer). Under the circumstances of this case, to construe Exclusion 2(h) as broadly as Progressive requests would be to nullify coverage. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d at 828 (requiring a court to interpret an insurance policy so that coverage is not illusory). Progressive would virtually never have to pay.

11

In the words of another district court rejecting a similar argument for the identically worded exclusion on the same bond form, "[s]uch a reading cannot withstand scrutiny." *First Nat. Bank in Manitowoc v. Cincinnati Ins. Co.*, 2005 WL 2460719, *6 (E.D. Wis. 2005); *see also Provost v. Unger*, 949 F.2d 161, 165 (5th Cir. 1991) ("[W]e interpret contracts to avoid absurd results."). Under the circumstances of this case, Exclusion 2(h) does not apply.

3.      Direct Result

In its final colorable argument,[4] Progressive argues that coverage is prevented by the Bond's requirement of causation. Under Insuring Agreement D, the Bond insures only losses "resulting directly" from forgery, as defined to include unauthorized endorsement. Def. App. Vol. I, Exh. 3, at 24. Progressive asserts that Citibank's loss results not from Citibank's action, but from Lindley's.

Because the Bond does not define "directly," the Court looks at its plain meaning. *See DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999). According to Webster, the word means "proceeding from one point to another in time or space without deviation or interruption." Progressive argues that Lindley's alleged misuse of the GoldenLife funds was an intervening action without which Citibank would not be liable. It is true that GoldenLife's loss was caused by a combination of factors. Citibank's own liability, however, accrued at the moment of the improper deposits, and thus resulted directly therefrom.

Progressive's interpretation would result, once again, in Progressive's virtually never having to pay. The Court can conceive of no scenario in which a bank might sustain loss for an unauthorized deposit in the absence of some mis- or malfeasance on the part of a third party.

---

[4] Progressive has withdrawn it's defense to the breach of contract claim that Citibank failed to comply with the Bond's "proof of loss" requirement. *See* Def. Reply, at 11-12.

Progressive's reading of the Bond's language is rejected as rendering coverage illusory. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d at 828.

For all of these reasons, Citibank is entitled to summary judgment on the contract claim. Based on the state court judgment, and based independently on this Court's construction of the Bond, Citibank is entitled as a matter of law to Bond coverage for the GoldenLife Settlement.

B.  Bad Faith

For wrongful denial of coverage under the Bond, Citibank sues for breach of the duty of good faith and fair dealing under Texas common law, and under Sections 541.060, 541.151, and 542.003 of the Texas Insurance Code. Progressive has moved for summary judgment on all of these claims; and the Court agrees that none can stand.

To prevail on the common-law claim, Citibank must show (1) that the insurer either denied or delayed payment of the claim; and (2) that the insurer knew or should have known that coverage was "reasonably clear." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997); *see Hamburger v. State Farm Mut. Auto Ins. Co.*, 361 F.3d 875, 880 (5th Cir. 2004). An insurer does not breach the duty of good faith merely by denying a claim in error, or by interpreting a policy in a manner held later to be legally incorrect. *See United States Fire. Ins. Co. v. Williams*, 955 S.W.2d 267, 268 (Tex. 1997); *Hamburger*, 361 F.3d at 881. A bona fide coverage dispute does not support a claim of bad faith. *See id.*; *Parkans Int'l, LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002).

In this case, Progressive's various positions in denying coverage are supported by a reasonable basis, even if marginally so. Apart from Progressive's mere denial of coverage, Citibank

13

comes forward with no summary judgment evidence from which bad faith might be inferred.[5] The Court is of the view that the undisputed facts support a bona fide dispute, which cannot sustain a claim. *See Parkans Int'l, LLC v. Zurich Ins. Co.*, 299 F.3d at 519 (finding no bad faith as a matter of law where a "reasonable basis for denial of coverage" existed).

In the absence of a genuine issue of material fact supporting common-law bad faith, Citibank's statutory cause of action under sections 541.151 and 541.060 of the Texas Insurance Code must fail as well. *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir.1997) (holding that statutory "bad faith" claims require the same predicate for recovery as under common law); *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App.--Tyler 1994, writ denied) (same) (citing *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597 (Tex.1993)). As for Citibank's pleaded claim under section 542.003 of the Insurance Code, that provision (formerly Article 21.21-2, § 2(b)) allows enforcement by the State Board of Insurance but does not create a private cause of action. *American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 847 & nn. 10-11 (Tex. 1994). All of Citibank's extra-contractual claims are therefore dismissed.

C.    State Court Costs

Citibank has sued also for the costs and attorney's fees it incurred in the GoldenLife Lawsuit. Progressive argues that no lawful grounds support the recovery; and the Court agrees.

Under Texas law, a party may recover litigation costs and attorney's fees only if allowed by statute or agreement. *Hamman v. Southwestern Gas Pipeline, Inc.*, 832 F.2d 55, 57 (5th Cir. 1987). By express Bond provision, Progressive is not liable for costs and fees expended by its insured in

---

[5] Although the parties' cross-motions were filed before entry of a scheduling order, Citibank has not moved to conduct discovery to rebut Progressive's motion for summary judgment on the "bad faith" claims.

an underlying lawsuit, even if the Bond otherwise covers the insured's loss therein. Def. Vol. I, Exh. 3, at 34 (Exclusion 2(u)). A Rider to the Bond nullifies this exclusion under certain circumstances, but not for coverage sought under the "Forgery or Alteration" provision. *See id*. at 60 (Court Costs and Attorneys Fees Rider). As Citibank seeks here to recover its loss in the GoldenLife Lawsuit under the "Forgery or Alteration" provision, as amended, the costs Citibank incurred in the GoldenLife Lawsuit are not recoverable under the Bond. Citibank cites no authority allowing recovery in the absence of contractual entitlement. Accordingly, Citibank's claim for state court costs and fees is dismissed.

D.   Costs and Attorney's Fees Incurred in the Present Lawsuit

In its Original Complaint, Citibank asks for costs and attorney's fees incurred in this case. As prevailing plaintiff in a suit for breach of contract, Citibank is so entitled. TEX. CIV. PRAC. & REM. CODE § 38.001 (Vernon 2005); *DP Solutions, Inc. v. Rollins, Inc*., 353 F.3d 421, 436 (5th Cir. 2003) ("An award of attorneys' fees is mandatory for a party prevailing in a breach of contract case."). Court costs and attorney's fees will be awarded to Citibank.

### IV.  Conclusion

For the reasons given above, Citibank's motion for partial summary judgment on the issue of breach of contract is **GRANTED**. Under the terms of the Financial Institution Bond, Progressive is liable to Citibank for coverage of Citibank's loss incurred in settlement of the GoldenLife Lawsuit. In addition, Citibank is entitled to court costs and reasonable attorney's fees incurred in the present case for enforcement of the Bond.

In all other things, Citibank's motion is **DENIED**, and Progressive's motion for summary judgment is **GRANTED**. Citibank's remaining causes of action are **DISMISSED**.

Citibank is **DIRECTED** to confer with Progressive on an agreed form of Final Judgment, and to submit a proposed judgment to the Court by **noon, December 27, 2006.** In the unlikely event the parties cannot reach agreement on the proposed form of judgment, Progressive is **DIRECTED** to file its objections by **noon, December 28, 2006.**

With regard to Citibank's attorney's fees incurred in this case, the parties are **DIRECTED** to confer in an attempt to reach agreement on a reasonable amount and, if successful, to submit a proposed agreed order on attorney's fees by **noon, January 5, 2007.** In the absence of agreement, Citibank may file its application on or before the same date; and Progressive may file its objections by **noon, January 10, 2007.**

SO ORDERED.

DATED:   December 21, 2006..


_____
BAREFOOT SANDERS, SENIOR JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS